BOARD OF HEALTH OF THE TOWNSHIP OF WEEHAWKEN, IN THE COUNTY OF HUDSON, PLAINTIFF-RESPONDENT, v. THE NEW YORK CENTRAL RAILROAD COMPANY, DEFENDANT-APPELLANT.

Argued May 12, 1952—Decided June 26, 1952.

See also 10 *N. J.* 284, 90 *A. 2d* 736.

296

Mr. *Joseph A. Davis* argued the cause for the appellant (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys).

Mr. *James Rosen* argued the cause for the respondent.

The opinion of the court was delivered by VANDERBILT, C. J.

I

On October 23, 1951, the Board of Health of the Township of Weehawken caused 19 separate complaints to be filed in

the municipal court of the township charging the New York Central Railroad Company with violations of its ordinance to regulate and control air pollution. Four of the complaints charged a violation of section 2 of the ordinance and 15 of the complaints a violation of both sections 2 and 5 of the ordinance. These sections provide as follows:

"Section 2. Emission of Dense Smoke Prohibited. It shall be unlawful for any person, firm or corporation to permit or cause the emission of any smoke from any source whatever of a density equal to or greater than that density described as No. 2 on the Ringlemann chart published by the United States Bureau of Mines, the standards of which are hereby fully adopted by the enactment of this ordinance and set forth in Section 10 herein. The emission of such dense smoke is declared to be a public nuisance and may be summarily abated by the Board, or by anyone whom it may designate for such purpose, provided, however, that this section shall not be applicable to the circumstances set forth in Section 3 herein."

"Section 5. Smoke, etc. Resulting from Negligence. It shall be unlawful for any person, firm or corporation to permit or cause, as a result of his, her, or its negligence, the escape of dense smoke or of such quantities of soot, cinders, noxious acids, fumes and gases in such place or manner as to be detrimental to any person or to the public or to endanger the health, comfort or safety of any such person or of the public or in such manner as to cause or have a tendency to cause injury or damage to property or business."

On December 5, 1951, trials were had on two of the complaints each of which charged violations of both sections 2 and 5. At the trial on the first of these complaints two of the defendant's employees were subpoenaed to testify, but they refused so to do and on December 19, 1951 they were held in contempt of court and fined $200 each. Appeals from these contempt convictions were taken to the Appellate Division of the Superior Court pursuant to *R. S.* 2:15–3 (now *N. J. S.* 2*A* :10–3; see also *Rule* 1:2–18*A* and *Rule* 4:2–6). These appeals were certified by this court and are affirmed in the companion decision, 10 *N. J.* 284.

Following the entry of the contempt judgments above mentioned, the municipal court proceeded on December 19, 1951 to enter judgment fining the defendant $100 on the first complaint and on January 4, 1952 entered a similar judg-

ment against the defendant on the second complaint. The defendant moved to set aside the judgment of January 4, 1952, but the motion was denied. From the judgments of conviction on these two complaints the defendant appealed to the Hudson County Court and from the order denying its motion for a new trial it appealed to the Appellate Division of the Superior Court. These three appeals are presently pending in the courts referred to and are not now before us.

On January 9, 1952 the defendant moved to dismiss the 17 remaining complaints on the ground that the court had "no jurisdiction over the subject matter, or over the person of the defendant, for the reason that said ordinance and the statutes authorizing the enactment of said ordinance are unconstitutional, in that said ordinance and statutes violate the provisions of *Art. I, par.* 8; *Art. I, par.* 9, and *Art. I, par.* 10 of the *Constitution of* 1947." The motion was denied by the municipal court and the defendant filed a notice of appeal to the Appellate Division of the Superior Court, stating therein that the appeal was pursuant to *Rule* 4:2–2(*a*) (3). Subsequently, on January 16, 1952, trials were had on the 17 complaints and, the defendant not appearing, judgment against it in the sum of $100 was entered on each complaint. On our own motion we certified here the appeal from the order of the municipal court denying the defendant's motion to dismiss the 17 complaints.

▉ While the point is not raised by the respondent, we cannot ignore the procedural infirmities on this appeal. In *State v. Yaccarino,* 3 *N. J.* 291 (1949), we held that "procedurally at least and within the intendment of *Rule* 2:11 a prosecution for violation of an ordinance is essentially criminal in nature." *Rule* 2:11 provides in part:

"The only method of reviewing a judgment or order in a criminal cause or proceeding in an inferior court of limited criminal jurisdiction, other than a Criminal Judicial District Court, shall be by appeal as herein provided.

(a) *Appeals. How Taken.* Appeals from judgments of conviction in the inferior courts of limited criminal jurisdiction shall be

taken to the County Court of the county in which such inferior court is located, unless the judge of the inferior court is also the county judge, in which case the appeal. shall be taken to the law division of the Superior Court in said county. * * *"

Other than by following the procedures outlined in *Rule* 2:11, the only way to secure a review of a criminal proceeding in a municipal court is by an application to the Appellate Division of the Superior Court for leave to appeal pursuant to *Rule* 4:5. In *State v. Yaccarino,* we stated, 3 *N. J.* at *page* 297:

"It is our conclusion, therefore, that review of judgments of conviction in the local criminal courts may be had only by way of appeal to the County Court, except in extraordinary cases 'where it is manifest that the interests of justice require otherwise,' when—and only when—review may be had directly by the Appellate Division of the Superior Court at its discretion."

■ Despite the plain and unambiguous language of *Rules* 2:11 and 4:5 and the decision in *State v. Yaccarino,* the defendant here chose to ignore the procedures established for securing the review of criminal proceedings in the municipal courts and instead elected to appeal directly to the Appellate Division of the Superior Court from the interlocutory order denying its motion to dismiss the complaints, asserting that it was doing so pursuant to *Rule* 4:2–2(a) (3) which provides:

"(a) Appeals may be taken to this court from orders or judgments, whether or not interlocutory: * * *
(3) Determining that the court has jurisdiction over the subject matter or the person."

This rule, however, does not permit an appeal to the Appellate Division as of right from a judgment of a municipal court in a criminal proceeding, for otherwise *Rule* 4:5 (see also *Rule* 4:2–3) would be rendered largely meaningless. Referring again to *State v. Yaccarino,* we there said, 3 *N. J.* at *page* 296:

"In the light of the appeal as of right to the County Court, with a trial *de novo*, granted to the defendant by *Rule* 2 :11 and his further appeal as of right from the determination of the County Court to the Appellate Division of the Superior Court, *Rule* 2 :11(*i*), it is clear that the discretion of the Appellate Division to review a cause directly from the local criminal courts under *Rule* 4 :5 is confined to extraordinary cases such as where the jurisdiction of the inferior court is questioned on persuasive grounds or where the complaint is palpably defective."

As a general rule interlocutory orders or judgments are not appealable at all and the rules permitting appeals from such orders are not to be expanded by interpretation. Exceptions to the general rule barring appeals from interlocutory orders and judgments are designed solely for the purpose of expediting litigation and to spare litigants the expense of what might prove to be an unnecessary trial, see *Milk Driver's, etc., Local 680 v. Shore Dairies, Inc.*, 8 *N. J.* 32 (1951). No substantial reason can be advanced for permitting an appeal from an interlocutory order of a municipal court. Proceedings there are never protracted or expensive and to allow such an appeal could serve no useful purpose.

In a previous proceeding between these same parties the defendant, represented by the same counsel then as now, attempted an appeal from the municipal court directly to the Appellate Division of the Superior Court, notwithstanding the rules, and we there granted its motion made at the oral argument to certify the cause, *Bd. of Health of Weehawken Tp. v. N. Y. Central R. Co.*, 4 *N. J.* 293 (1950). For this reason we are particularly reluctant to countenance once more a deviation from the established procedure and do so only because the questions raised and argued on this appeal are essential to the determination of the contempt appeals, properly taken and decided in another opinion handed down herewith.

## II

Preliminarily we must consider the respondent's contention that on principles of *res judicata* and *stare decisis*

the defendant is estopped from here challenging the validity of the air pollution ordinance for the reason that in a previous case involving the same parties it was held to be constitutional, *Bd. of Health of Weehawken Tp. v. N. Y. Central R. Co., 4 N. J. 293* (1950), *supra.* The doctrine of *res judicata*, however, is plainly not applicable for this is an entirely different proceeding involving fresh violations of the ordinance. Our decision rendered on the defendant's appeal from its prior convictions is no more a bar now to its defense than to its prosecution. Any defendant in a criminal proceeding is completely free and has the right not only to raise in his defense any questions of law or fact which he did not raise, whether by inadvertence or design, in a previous prosecution for a different violation of the same law, but also to reassert, for what they may be worth, any defenses upon which he previously relied whether decided favorably or adversely to him. Neither does the doctrine of *stare decisis* here compel a decision holding the ordinance valid, for the simple reason that the questions here presented concerning the defendant's right to indictment and trial by jury, while advanced by the defendant in his opening to the trial court in the previous proceeding, were subsequently abandoned and were neither briefed and argued on the appeal nor passed upon in our decision, see *Penna-Reading S. S. Lines v. Board of Public Utility Com'rs, 5 N. J. 114, 123* (1950).

The principal question on this appeal is whether or not the municipal court had jurisdiction to try the defendant on these complaints. The resolution of this question depends in turn upon whether the ordinance and the statutes pursuant to which it was enacted providing for a summary trial on complaint violate the defendant's right to indictment and to trial by jury as guaranteed by *paragraphs* 8 and 9 of *Article I* of the *Constitution of* 1947:

"8. No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases now prosecuted without indictment, or

arising in the army or navy or in the militia, when in actual service in time of war or public danger.

9. The right of trial by jury shall remain inviolate; but the Legislature may authorize the trial of civil causes by a jury of six persons when the matter in dispute does not exceed fifty dollars. The Legislature may provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury. The Legislature may authorize the trial of the issue of mental incompetency without a jury."

The extent of the right to a jury trial as guaranteed by *Article I, paragraph* 9 of the *Constitution of* 1947 was considered at length by this court in *Montclair v. Stanoyevich,* 6 *N. J.*. 479 (1951) and we there held:

"A similar provision was in Article XXII of our Constitution of 1776 in the following language: '* *. * the inestimable right of trial by jury shall remain confirmed, as a part of the law of this colony, without repeal, forever.' The 1844 Constitution, Article I, par. 7, provided: 'The right of trial by jury shall remain inviolate * * *.' Article I; par. 9 of the 1947 Constitution reenacted the provision in that precise language. The right of trial by jury, which was thus confirmed and retained inviolate, is not and has never been a right which a defendant could invoke in all instances, even in charges of a criminal nature. It is and has been applicable only in those matters in which it existed anciently under the common law." 6 *N. J.* at *page* 484.

The right of trial by jury protected in each of our Constitutions is the right as it existed at common law *and* remained on July 2, 1776." 6 *N. J.* at *page* 485.

A defendant in a criminal proceeding today is entitled as of right to a jury trial only if the offense with which he is charged was triable by a jury at common law, or, should it be a new offense created by statute, if it belongs to a class of cases triable by jury at common law, 1 *Cooley's Constitutional Limitations* (*8th ed.* 1927), 668. Our constitutions have merely preserved the right of trial by jury; they have not extended it.

The common law institution of an indictment or presentment of a grand jury was made a part of the law of this State by virtue of Articles XXI and XXII of the Constitution of 1766 which respectively continued in force until

altered by the Legislature such of the statutes contained in *Allinson's Laws* and such of the common and statutory law of England then in effect as were not incompatible with the new Constitution. It is to be noted, however, that there was no provision in the Constitution of 1776 guaranteeing persons the right to an indictment or presentment by a grand jury before being put to trial for a criminal offense and the Legislature under that Constitution was therefore free to alter or abolish the grand jury process as it might see fit. Persons in this State were in fact subject to prosecution on criminal informations and in theory on presentments of a coroner's jury or on appeals, see *In re Presentment to the Superior Court, Camden County,* 10 *N. J.* 23 (1952), until by *Article I, paragraph* 9 of the *Constitution of* 1844 it was provided:

> "No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases cognizable by justices of the peace, or arising in the army or navy or in the militia, when in actual service in time of war or public danger."

It has been repeatedly held that this constitutional provision secured to all persons the right to an indictment by a grand jury before being placed on trial for any offense not theretofore within the jurisdiction of the justice of the peace, and that the Legislature could not whittle away the protection thus afforded by placing a common law indictable offense within the jurisdiction of the local criminal courts, *State v. Anderson,* 40 *N. J. L.* 224 *(Sup. Ct.* 1878) ; *State v. Terry,* 72 *N. J. L.* 375 *(Sup. Ct.* 1905), affirmed 73 *N. J. L.* 554 *(E. & A.* 1905) ; *Atlantic City v. Rollins,* 76 *N. J. L.* 254 *(Sup. Ct.* 1908) ; *State v. Green,* 96 *N. J. L.* 434 *(Sup. Ct.* 1921) ; *Katz v. Eldredge,* 97 *N. J. L.* 123 *(E. & A.* 1921) ; *Richardson v. State Board,* 99 *N. J. L.* 516 *(E. & A.* 1923) ; *Everingham v. Millville,* 3 *N. J. Misc.* 293 *(Sup. Ct.* 1925), affirmed 101 *N. J. L.* 566 *(E. & A.* 1925) ; *Wilentz v. Galvin,* 125 *N. J. L.* 455 *(Sup. Ct.* 1940).

 *Article I, paragraph* 9 of the *Constitution of* 1844 was carried over into the *Constitution of* 1947 as *Article I, paragraph* 8, with the only change in language being the substitution of the words "cases now prosecuted without indictment" for the phrase "cases cognizable by justices of the peace." The argument is here advanced by the respondent that this change constituted a ratification of any then existing statutes and ordinances which may have provided for the summary punishment of indictable offenses. An analogous argument with respect to the construction of *Article I, paragraph* 9 of the *Constitution of* 1947 was rejected in *Montclair v. Stanoyevich,* 6 *N. J.* 479 (1951), *supra,* and we likewise reject it here. The change in the language of this constitutional provision was occasioned not by any design to validate existing unconstitutional legislation and to reduce the protection afforded an individual by the traditional grand jury process, but rather was necessitated by the elimination of the justice of the peace from the Constitution (see *Art. VI, Sec. VII, par.* 1 and *Art. VII, Sec. II, par.* 7 of the *Constitution of* 1844 which were not carried over into the new Constitution) and the anticipated elimination in fact of the justice of the peace and other local criminal courts in favor of a single court of limited criminal jurisdiction in each municipality, see resolution of the Constitutional Convention of 1947, 1 *Convention Proceedings* 847; *State v. Yaccarino,* 3 *N. J.* 291 (1949), *supra; Montclair v. Stanoyevich,* 6 *N. J.* 479, 491–494 (1951), *supra; In re Presentment to the Superior Court, Camden County,* 10 *N. J.* 23 (1952), *supra.* We reiterate here what has previously been stated by this court, that under *Article I, paragraph* 8 of the *Constitution of* 1947 as under *Article I, paragraph* 9 of its predecessor, "the touchstone in determining whether an indictment is or is not constitutionally requisite is whether or not the offense was one at common law," *Montclair v. Stanoyevich,* 6 *N. J.* 479, 487–488 (1951), *supra.*

 Directing our inquiry now to a consideration of the sections of the ordinance that the defendant was charged

with violating, it is readily apparent that section 2 thereof does not prohibit acts constituting a public nuisance at common law. It makes unlawful "the emission of any smoke from any source whatever of a density equal to or greater than that density described as No. 2 on the Ringleman chart." The emission of smoke of the requisite density *per se* is prohibited without the necessity of any showing that injury to the public was caused thereby, see *State v. Mundet Cork Corp.*, 8 *N. J.* 359, 369–370 (1952). The mere fact that the ordinance characterizes the emission of such smoke as a public nuisance does not elevate the offense to the level of a public nuisance as known to the common law.

The reason for a municipality making unlawful the emission of smoke is readily apparent. The issuance of dense smoke from a single chimney, in and of itself, may be altogether harmless and cause no inconvenience or damage to the public, but if smoke of like density issued from hundreds of chimneys, the contamination of the atmosphere would be substantial and the injury to the public considerable, yet for lack of the requisite elements of a public nuisance at common law, the municipality could obtain no relief by way of indictment. Ordinances making unlawful the emission of smoke are therefore obviously necessary and reasonable and a valid exercise of the local police power, *Board of Health of Weehawken Tp. v. N. Y. Central R. R. Co.*, 4 *N. J.* 293 (1950) *supra; State v. Mundet Cork Corp.*, 8 *N. J.* 359 (1952), *supra*. Since section 2 of the ordinance makes unlawful conduct that did not constitute an indictable offense at common law, it follows that violations thereof may constitutionally be tried summarily in the municipal court without indictment or jury trial.

### III

It is necessary in conclusion to ascertain the effect of our determinations on the 17 complaints involved on this appeal. In this regard we are handicapped by the fact that all of the

complaints are not reproduced or adequately identified in the record before us and by the fact that the judgments of conviction entered on these complaints likewise are not set forth in the record. However, it does appear that 4 of the 17 complaints charge only a violation of section 2 of the ordinance. On these four complaints the defendant could constitutionally be tried summarily in the municipal court and, accordingly, as to them the municipal court properly denied the defendant's motion to dismiss.

The remaining 13 complaints involved on this appeal charge violations of both sections 2 and 5 of the ordinance in separate paragraphs. Insofar as each of these complaints charges a violation of section 2 of the ordinance, it was within the jurisdiction of the municipal court to try them. The defendant was therefore not entitled to prevail on its motion to have the complaints dismissed in their entirety. In view of this conclusion as to the validity of section 2 of the ordinance, we find it unnecessary to pass on the validity of section 5.

The defendant's motion was therefore properly denied and the order entered thereon is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.