695 A.2d 303

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. ONE 1990 HONDA ACCORD, NEW JERSEY REGISTRATION NO. HRB–20D, VIN NO. 1HGCB7659LA063293 AND FOUR HUNDRED TWENTY DOLLARS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 20, 1997—Decided June 16, 1997.

Rodríguez, A.A., J.A.D., filed dissenting opinion.

———

Before Judges LONG, A.A. RODRÍGUEZ and CUFF.

*Elizabeth Macron,* attorney for appellant.

*John Kaye,* Monmouth County Prosecutor, attorney for respondent (*Patricia B. Quelch,* of counsel and on the brief).[1]

The opinion of the Court was delivered by

LONG, P.J.A.D.

The issue raised in this case is whether the owner of property subject to forfeiture under *N.J.S.A.* 2C:64–1 is entitled to a jury trial pursuant to article 1, paragraph 9 of the New Jersey Constitution. For the reasons that follow, we have concluded that a jury trial is required when demanded by a claimant in a forfeiture action and that the summary disposition contemplated by the statute does not pass constitutional muster.

The case arose when the State instituted an action seeking forfeiture of a 1990 Honda Accord automobile which was owned by claimant, Lois McDermott. She answered, demanding a jury trial and counterclaimed for a declaration that *N.J.S.A.* 2C:64–3(f), which provides for non-jury disposition of a forfeiture action, is unconstitutional. The trial judge granted the State's motion to dismiss the counterclaim. The case was then tried before a judge who ordered forfeiture of the vehicle to the State.[2] Mrs. McDermott appeals. We reverse.

---

[1] The Attorney General was advised of the pendency of this appeal pursuant to *R.* 2:5–1(h) and chose not to participate.

[2] The facts underlying the forfeiture will not be recounted because they are irrelevant to the legal issue presented. It is sufficient to say that they involve

■ Forfeiture is the "divestiture without compensation of title to property used to further criminal activity." *State v.1979 Pontiac Trans Am*, 98 *N.J.* 474, 479, 487 *A.2d* 722 (1985). "Statutes authorizing forfeiture stem from ancient religious beliefs that religious expiation was required of a chattel that caused a person's death." *Ibid.* (citing *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 *U.S.* 663, 680–81, 94 *S.Ct.* 2080, 2090, 40 *L. Ed.*2d 452, 466–67 (1974)). Oliver Wendell Holmes described modern forfeiture law as the last vestige of the common law deodand.[3] O.W. Holmes, *The Common Law*, pp. 25–30 (1923). The deodand, which was a payment to the Crown by the owner of an object that accidentally caused the death of another, based assignment of liability regardless of guilt or innocence. *See* Jacob J. Finkelstein, *The Goring Ox: Some Historical Perspectives on Deodands, Forfeitures, Wrongful Death and the Western Notion of Sovereignty*, 46 *Temp. L.Q.* 169, 249–51 (1973). However, the forfeiture action eventually lost its religious connotation and simply became a source of revenue for the Crown, where it was justified as a penalty for carelessness. *1979 Pontiac Trans Am, supra*, 98 *N.J.* at 479–80, 487 *A.2d* 722.

While the law of deodands did not become part of the common law tradition of the United States, modern forfeiture statutes descend from this ancient heritage. *Id.* at 480, 487 *A.2d* 722 (citing *Calero–Toledo, supra*, 416 *U.S.* at 682–83, 94 *S.Ct.* at 2091–92, 40 *L.Ed.*2d at 468; *United States v. United States Coin & Currency*, 401 *U.S.* 715, 720, 91 *S.Ct.* 1041, 1044, 28 *L.Ed.*2d 434, 438 (1971)). Modern forfeiture statutes, however, are supported by more contemporary considerations than those originally giving

---

Mrs. McDermott's son's use of her car for criminal purposes. The State argued that Mrs. McDermott should have been aware of her son's propensity for unlawful activity and taken steps to secure the automobile from his use. Mrs. McDermott contended that she was an innocent owner who never consented to the illegal use of her property and did all that she could to prevent that use.

[3] The term "deodand" derives from the latin phrase "Deo dandum", meaning "a thing to be given to God." *Black's Law Dictionary* 392 (5th ed.1979).

rise to forfeiture. *Ibid.* "Currently, our forfeiture statute represents a legitimate exercise of the State's police power of preventing further unlawful use of property because of the statute's punitive and deterrent effect." *State v. One 1986 Subaru,* 230 *N.J.Super.* 451, 456, 553 *A.*2d 869 (App.Div.1989), *aff'd in part, rev'd in part,* 120 *N.J.* 310, 576 *A.*2d 859 (1990). These statutes act as a means of preventing the commission of a particular offense and of providing incentives to owners of property to be more responsible in its use. *State v. One 1988 Honda Prelude,* 252 *N.J.Super.* 312, 316–17, 599 *A.*2d 932 (App.Div.1991).

Unlike common law forfeiture, statutory forfeiture is limited to the property itself, "which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient." *Farley v. $168,-400.97,* 55 *N.J.* 31, 37–38, 259 *A.*2d 201 (1969) (quoting *Various Items of Personal Property v. United States,* 282 *U.S.* 577, 581, 51 *S.Ct.* 282, 284, 75 *L.Ed.* 558, 561 (1931)). Obviously, however, although the property is treated as the defendant for historical reasons, it is, in reality, the claimant who is the interested party. *United States v. Real Property Located at 2101, 2280, 2401 and 2501 Maple St.,* 750 *F.Supp.* 817, 818 n. 2 (E.D.Mich.1990). "To treat the claimant as if [she] were an intervenor in a suit between the government and a piece of property would be an exaltation of form over substance." *Ibid.*

■ *N.J.S.A.* 2C:64–1 to –9 sets forth the method by which contraband property and property which has been or is intended to be used in criminal activity may be subject to forfeiture in New Jersey. *N.J.S.A.* 2C:64–3(f), which addresses forfeiture of non-contraband property, prescribes in relevant part:

> If an answer is filed, the Superior or county district court shall set the matter down for a summary hearing as soon as practicable.

On its face, this statute provides for a non-jury, or summary, proceeding in a civil *in rem* forfeiture action. It is this provision which Mrs. McDermott claims is unconstitutional because it denies her right to a jury trial. Her claim is necessarily footed in the

New Jersey Constitution because the Seventh Amendment to the United States Constitution which guarantees the right to trial by jury is not binding upon state courts. *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 *U.S.* 211, 217, 36 *S.Ct.* 595, 596, 60 *L.Ed.* 961, 963 (1916).

■ Article 1, paragraph 9 of the New Jersey Constitution of 1947 provides:

> The right of trial by jury shall remain inviolate; but the Legislature may authorize the trial of civil causes by a jury of six persons when the matter in dispute does not exceed fifty dollars. The Legislature may provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury. The Legislature may authorize the trial of the issue of mental incompetency without a jury.[4]

Our courts have interpreted this constitutional provision as preserving the right to a jury trial to the extent that such a right existed prior to 1776 when our Constitution was first adopted. *State v. Anderson*, 127 *N.J.* 191, 210, 603 *A.2d* 928 (1992) (Wilentz, C.J., dissenting) (citing *Montclair v. Stanoyevich*, 6 *N.J.* 479, 484, 79 *A.2d* 288 (1951)).[5] What this means is that "a new offense created by statute entitles the defendant to a constitutional right of trial by jury only 'if it belongs to a class of cases triable by jury at common law * * *. Our constitutions have merely preserved the right of trial by jury; they have not extended it.' " *Id.* at 211, 603 *A.2d* 928 (quoting *Board of Health of Weehawken Township v. New York Cent. R.R. Co.*, 10 *N.J.* 294, 303, 90 *A.2d* 729 (1952)).

■ The question presented is whether the right to a jury trial was available at common law in a forfeiture action. Its answer requires a historical analysis of the law prior to the adoption of our original Constitution. In 1776, New Jersey declared its

---

[4] As originally enacted this provision allowed for a jury of six "when the matter in dispute does not exceed fifty dollars." This language was omitted by amendment effective December 4, 1973.

[5] Although we recognize that there have been other versions of our Constitution since 1776, the grant or denial of a jury trial is not affected by the application of one version over another. *See* Bruce D. Greenberg & Gary K. Wolinetz, *The Right to a Civil Jury Trial in New Jersey*, 47 Rutgers L.Rev. 1461, 1502 n. 35 (1995).

independence from England and, in so doing, it adopted the common law of England as its own law. *N.J. Const. of 1776*, paragraph XXII. "The traditions of civil law generally received into the American Colonies included the twin features of the English system of laws—the right to trial by jury for an action at common law, and the right to an equitable action when a remedy of law might be inadequate." *Lyn–Anna Properties, Ltd. v. Harborview Dev. Corp.*, 145 *N.J.* 313, 318, 678 *A.*2d 683 (1996). The term "common law" refers to the principles of English law which evolved in the common law courts, unlike the principles which were employed in the courts of chancery and admiralty and the ecclesiastical courts. *People v. One 1941 Chevrolet Coupe*, 37 *Cal.*2d 283, 231 *P.*2d 832, 836 (1951). "It was well known that there was no right to jury trial in equity or admiralty cases, but only in proceedings 'at common law.'" *United States v. One 1976 Mercedes Benz 280S*, 618 *F.*2d 453, 457 (7th Cir.1980).

Prior to the American Revolution, English admiralty courts heard forfeiture cases involving seizures on navigable waters and common law courts (Courts of Exchequer) heard cases involving forfeitures on land. *Commonwealth of Pennsylvania v. One 1984 Z–28 Camaro Coupe*, 530 *Pa.* 523, 610 *A.*2d 36, 39–40 (1992). The admiralty cases were bench trials while the Exchequer cases were tried by jury. *Id.* 610 *A.*2d at 40.

The forfeiture practice of England as it was adopted in colonial America was set forth by Chief Justice Stone in *C.J. Hendry Co. v. Moore*, 318 *U.S.* 133, 137–153, 63 *S.Ct.* 499, 501–510, 87 *L.Ed.* 663, 666–675 (1943):

> The common law as it was received in the United States at the time of the adoption of the Constitution did not afford a remedy in rem in suits between private persons. . . . *But to the generalization that a judgment in rem was not a common law remedy there is an important exception. Forfeiture to the Crown of the offending object, because it had been used in violation of law, by a procedure in rem was a practice familiar not only to the English admiralty courts but to the Court of Exchequer.* The Exchequer gave such a remedy for the forfeiture of articles seized on land for the violation of law. And, concurrently with the admiralty, it entertained true proceedings in rem for the forfeiture of vessels for violations on navigable waters. Such suits in the Exchequer were begun on information and were against the vessel or article to be condemned. Under the

provisions of many statutes the suit might be brought by an informer qui tam, who was permitted to share in the proceeds of the forfeited article; the judgment was of forfeiture and the forfeited article was to be sold. This was the established procedure certainly as early as the latter part of the seventeenth century....

. . . .

*Separate courts exercising jurisdiction of the Court of Exchequer were never established in the American Colonies. Instead, that jurisdiction was absorbed by the common law courts which entertained suits for the forfeiture of property under English or local statutes authorizing its condemnation. Long before the adoption of the Constitution the common law courts in the Colonies—and later in the states during the period of Confederation—were exercising jurisdiction in rem in the enforcement of forfeiture statutes.* Like the Exchequer, in cases of seizure on navigable waters they exercised a jurisdiction concurrently with the courts of admiralty. But the vice-admiralty courts in the Colonies did not begin to function with any real continuity until about 1700 or shortly afterward. By that time, the jurisdiction of common law courts to condemn ships and cargoes for violation of the Navigation Acts had been firmly established, apparently without question, and was regularly exercised throughout the colonies. In general the suits were brought against the vessel or article to be condemned, were tried by jury, closely followed the procedure in Exchequer, and if successful resulted in judgments of forfeiture or condemnation with a provision for sale.

. . . .

*The Court* has never held or said that the admiralty jurisdiction in a forfeiture case is exclusive, and it *has repeatedly declared that, in cases of forfeiture of articles seized on land for violation of federal statutes, the district courts proceed as courts of common law according to the course of the Exchequer on informations in rem with trial by jury.* (Citations omitted) (Emphasis added).

Although, as noted, the 7th Amendment guarantee to the right of trial by jury is only binding upon federal courts, federal cases are helpful in construing a state's constitutional provision of like import. In *One 1976 Mercedes Benz 280S, supra,* the 7th Circuit performed a comprehensive historical analysis of civil *in rem* forfeiture proceedings, and held that, as of December 15, 1791, the effective date of the Bill of Rights, it was the practice in both England and America to provide for a jury trial in such proceedings. *One 1976 Mercedes Benz 280S, supra,* 618 *F*.2d at 468–69. The court commented that pursuant to the Judiciary Act of 1789, section 9, where a seizure occurred on land, the judge sat as a court of common law and empaneled a jury; where the seizure occurred on navigable waters, the judge sat as a court of admiralty and held a bench trial. *Id.* at 459–60. It "appears inescapable that both English and American practice prior to 1791 definitely

recognized jury trial of *in rem* actions at common law as the established mode of determining the propriety of statutory forfeitures on land for breach of statutory prohibitions." *Id.* at 466.

This conclusion is supported by a majority of decisions of the highest courts in states which have addressed the issue. These courts have generally found that there is a constitutional right to a jury trial in *in rem* civil forfeiture proceedings similar to *N.J.S.A.* 2C:64–1 to –9. *See One 1984 Z–28 Camaro Coupe, supra,* 530 *Pa.* 523, 610 *A.2d* 36; *Medlock v. 1985 Ford F–150 Pick Up,* 308 *S.C.* 68, 417 *S.E.2d* 85 (1992); *People ex rel. O'Malley v. 6323 North LaCrosse Ave.,* 158 *Ill.2d* 453, 199 *Ill.Dec.* 690, 634 *N.E.2d* 743 (1994); *In re Forfeiture of 1978 Chevrolet Van,* 493 *So.2d* 433 (Fla.1986); *Commonwealth v. One 1972 Chevrolet Van,* 385 *Mass.* 198, 431 *N.E.2d* 209 (1982); *One 1941 Chevrolet Coupe, supra,* 37 *Cal.2d* 283, 231 *P.2d* 832 [6]; *Idaho Dep't of Law Enforcement By and Through Cade v. Free,* 126 *Idaho* 422, 885 *P.2d* 381 (1994); *State v.1920 Studebaker Touring Car,* 120 *Or.* 254, 251 *P.* 701 (1926); and, *Vergari v. Marcus,* 26 *N.Y.2d* 764, 309 *N.Y.S.2d* 204, 257 *N.E.2d* 652 (1970). *But see People v. Allen,* 767 *P.2d* 798 (Colo.App.1988); *Swails v. State,* 263 *Ga.* 276, 431 *S.E.2d* 101, *cert. denied,* 510 *U.S.* 1011, 114 *S.Ct.* 602, 126 *L.Ed.2d* 567 (1993); *In re Forfeiture of $1,159,420,* 194 *Mich.App.* 134, 486 *N.W.2d* 326 (1992), *cert. denied,* 510 *U.S.* 867, 114 *S.Ct.* 189, 126 *L.Ed.2d* 147 (1993); and, *State v. Morris,* 103 *N.C.App.* 246, 405 *S.E.2d* 351 (1991).

Apparently recognizing the futility of its contention that a forfeiture action was not triable by a jury at common law, the State urges us to avoid this issue altogether by ruling in accordance with *Rybeck v. Rybeck,* 141 *N.J.Super.* 481, 506, 358 *A.2d* 828 (Law Div.1976), *certif. denied,* 75 *N.J.* 30, 379 *A.2d* 261 (1977),

---

[6] In *One 1941 Chevrolet Coupe,* the California Supreme Court stated that "[t]here are reports of many cases in the Court of Exchequer in which articles used in violation of law were forfeited to the Crown pursuant to statute, in all of which the cause was tried by a jury." 231 *P.2d* at 839. The court went on to cite thirty-eight such cases, the oldest from 1459. *Id.* at 839–841 n. 14.

that the Legislature may properly abrogate or alter any common law right or remedy prospectively. In that case, which involved a challenge to the constitutionality of the No–Fault Act, plaintiffs argued that the Act denied them access to the courts and a·jury trial by diminishing their negligence based causes of action. *Id.* at 507, 358 *A.*2d 828. The court rejected this argument on the basis that the whole range of common law causes of action existing at the time the Constitution was enacted are not permanently guaranteed against diminution. *Id.* at 505, 358 *A.*2d 828. Further, the trial judge stated:

> [O]ne has a right to access to the courts only to prosecute claims cognizable there. One having a claim abrogated or limited by valid legislation is not deprived of access to the courts any more than one whose claim is outlawed by passage of the statutory time to sue. The same is true of the right to jury trial. That right exists as to claims that may lawfully be heard by a jury. It does not survive valid prospective legislation providing that the claim should not be heard at all.
>
> In short, the legislature may validly abolish or alter a common law cause of action.
>
> [*Id.* at 507, 358 *A.*2d 828 (citations omitted).]

*Rybeck* stands only for the proposition that the Legislature may abrogate a common law cause of action altogether. It does not hold that the Legislature may deny a right to a jury trial in a cause of action triable by jury at common law, and indeed the Legislature may not do so. *See State v. Anderson, supra,* 127 *N.J.* at 210, 603 *A.*2d 928; *see also Guy v. Petty,* 275 *N.J.Super.* 536, 547 n. 3, 646 *A.*2d 546 (Law Div.1993).

On its face, the forfeiture action against Mrs. McDermott, which was a seizure on land of an automobile, not *prima facie* contraband, would have been within the jurisdiction of the English Court of Exchequer and thus subject to a jury trial. The same action would have been heard in New Jersey courts with a jury based upon the earlier Exchequer jurisdiction. Thus, an *in rem* forfeiture action under *N.J.S.A.* 2C:64–1 is subject to trial by jury pursuant to article 1, paragraph 9 of our Constitution.

The judgment appealed from is reversed. The case is remanded for a jury trial.

RODRÍGUEZ, A.A., J.A.D., dissenting.

I respectfully dissent. In my view, claimant has not shown that there was a common law right to a trial by jury in *in rem* forfeiture actions in existence in New Jersey on July 2, 1776 when our first constitution was enacted. Thus, *N.J.S.A.* 2C:64–3(f) does not contravene the New Jersey Constitution's guarantee that "the right to trial by jury shall remain inviolate." [1] I would therefore affirm the judgment of the Law Division.

It is well settled that the constitutional provision preserving the right to a jury trial applies only to the extent that such a right existed in New Jersey prior to the adoption of the first constitution in 1776. State v. *Anderson,* 127 *N.J.* 191, 210, 603 *A.*2d 928 (1992) (Wilentz, C.J., dissenting) (citing *Stanoyevich, supra,* 6 *N.J.* at 484, 79 *A.*2d 288). Claimant asserts that she presented to the judge "proof of the existence of a jury trial right attaching to statutory forfeitures pre-dating the enactment of the [first New Jersey] constitution." However, she does not cite one single authority which conclusively establishes such a right in New Jersey. The majority opinion outlines the historical origins of present-day forfeiture actions. It is true that in England, forfeiture actions were tried in either civil courts, which afforded a trial by jury, or in admiralty courts which did not provide for a jury trial. The existence of such right in England or in other states, however, is not sufficient as there was a divergence of practices and procedures under the common law from state to state. *See United States v. One 1976 Mercedes Benz 280S,* 618 *F.*2d 453, 456 (7th Cir. 1980).

In short, there is no proof that the residents of colonial New Jersey enjoyed a right to a jury trial in an *in rem* forfeiture actions on July 2, 1776. In my view, such proof is required before this court can declare an act of the Legislature to be unconstitutional.

Therefore, I would affirm.

---

[1] *N.J. Const.* art. I, ¶ 9.