275 N.J. Super. 536 (1993)
646 A.2d 546
FATELIN GUY, LAUREL GUY, AN INFANT, AND TONYA GUY, AN INFANT, BY THEIR GUARDIAN AD LITEM, IVY GUY, AND IVY GUY, INDIVIDUALLY, PLAINTIFFS,
v.
LAWRENCE G. PETTY, POOPA P. SHAH, AND PIYUSH S. SHAH, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided: November 9, 1993.
*540 Leonard D. Weiss for plaintiffs (Baer, Arbeiter & Ploshnick, attorneys).
Petra Vavra for defendants (Law Offices of Robert A. Auerbach, attorneys; Edward I. Davis on the brief).
MANNION, J.S.C.
This automobile accident case comes to the court on cross-motions for summary judgment. The suit arose from a car accident that occurred in Edison Township on July 21, 1990, the facts of which are not relevant for purposes of these motions.
Defendants Poopa and Piyush Shah ("Defendants") filed their motion against the minor plaintiffs Laurel Guy ("Laurel") and Tonya Guy ("Tonya"), who were passengers in their mother's car. The Shahs' motion asserts that the two minor plaintiffs have failed to meet the verbal threshold pursuant to N.J.S.A. 39:6A-8a and to the Supreme Court's opinion in Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992).
The plaintiffs cross-moved for an order declaring N.J.S.A. 39:6A-8 unconstitutional on the grounds that it denies equal protection and the right to trial by jury to the "economically disadvantaged." The Attorney General's office was notified that the statute was being challenged on constitutional grounds, but it declined to participate in this motion.
The court will first address plaintiffs' constitutional arguments. Then, because the court rejects those arguments, the court will address Defendants' summary judgment motion.

I. The Verbal Threshold Statute Does Not Deny Any Constitutional Rights to Low-Income Insureds
In a nutshell, plaintiffs assert that they (and other similarly-situated low-income people) cannot afford to pay the higher premium for the "no-threshold" tort option, which gives auto accident claimants the unrestricted right to sue for noneconomic damages. Instead, they argue, they are forced financially to choose the *541 "verbal threshold" tort option, which prohibits them from suing for anything other than major injuries. On the other hand, they argue, those with the financial means can afford to pay the higher premium for no-threshold, thus retaining the unrestricted right to sue. Therefore, plaintiffs argue that the verbal threshold statute violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the equal protection guarantee embodied in the New Jersey Constitution.[1]
Further, plaintiffs assert that the statute denies them the fundamental right to trial by jury guaranteed by the New Jersey Constitution.[2] They contend that the statute impermissibly forced plaintiffs, unable to afford the higher no-threshold premium, "to unwillingly and involuntarily forfeit their right to trial by jury."
The court notes that plaintiffs' trial by jury argument implicitly encompasses an alleged denial of access to the courts. The court will treat the two together.
N.J.S.A. 39:6A-8 (the "verbal threshold statute" or the "statute") is one section of the New Jersey Automobile Reparation Reform Act (the "No-Fault Act"), which was first enacted in 1972 and subsequently amended several times. N.J.S.A. 39:6A-1 to -35. The Act as a whole requires prompt payment of "personal injury protection" (PIP) expenses to automobile accident victims without regard to fault, and without having to await the outcome of protracted litigation. See Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 479-80, 366 A.2d 345 (App.Div. 1976). PIP payments include: medical expenses, lost wages, essential services, survivor benefits, and funeral expenses. N.J.S.A. 39:6A-4.
*542 The tort exemption section, N.J.S.A. 39:6A-8, gives the insured two choices for suing for noneconomic loss in the event of an auto-related injury. The "verbal threshold" option prohibits the insured from suing for pain and suffering, unless he or she has sustained a serious injury, i.e., one that falls within one of the nine enumerated categories. See N.J.S.A. 39:6A-8a. The "no-threshold" option gives the insured the unrestricted right to sue for any and all injuries arising out of the use of an automobile. See N.J.S.A. 39:6A-8b. The insured's selection of the no-threshold option will mean a substantially higher premium payment.

A. Constitutional Standards of Review
As an initial matter, the court notes that "there is a strong presumption that a statute is constitutional." WHYY, Inc. v. Glassboro, 50 N.J. 6, 13, 231 A.2d 608 (1967). Moreover, "to declare a statute unconstitutional is a judicial power to be delicately exercised." Id. Moreover, this power should be exercised rarely by a trial court, and only then when the statute is plainly at odds with the constitution. With that in mind, the court turns to the appropriate levels of constitutional review under the federal and state equal protection guarantees.
Federal equal protection analysis involves three tiers of review. First, if a statute regulates a "suspect class" or a "fundamental right," then the legislative classification is subject to strict scrutiny. To withstand strict scrutiny, the statute must further a compelling state interest, and there must be no less restrictive means of accomplishing that interest. Barone, supra, 107 N.J. at 364-65, 526 A.2d 1055; Brown v. City of Newark, 113 N.J. 565, 573, 552 A.2d 125 (1989). A "suspect class" is one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." Barone, supra, 107 N.J. at 365, 526 A.2d 1055 (quoting San Antonio Indep. School Dist. v. *543 Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16, 40 (1973)).
Second, if the statute regulates a "semi-suspect" class or substantially affects a fundamental right in an indirect manner, then the classification is examined under intermediate scrutiny, Barone, supra, 107 N.J. at 365, 526 A.2d 1055; Brown, supra, 113 N.J. at 573, 552 A.2d 125. Intermediate scrutiny requires the statute to be substantially related to an important government objective. Ibid.
If neither strict nor intermediate scrutiny applies, then the statute will be subjected to the rational basis test, which requires only that the classification be rationally related to a legitimate state interest. Barone, supra, 107 N.J. at 365, 526 A.2d 1055.
New Jersey has rejected this three-tiered approach in reviewing equal protection claims under the State Constitution. Instead, the New Jersey Supreme Court applies a more flexible balancing test. Generally, the issue in any case is "whether there is an appropriate governmental interest suitably furthered by the differential treatment involved." Borough of Collingswood v. Ringgold, 66 N.J. 350, 370, 331 A.2d 262 (1975). In striking a balance, the Court has considered "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Barone, supra, 107 N.J. at 368, 526 A.2d 1055 (quoting Greenberg v. Kimmelman, 99 N.J. 552, 567, 494 A.2d 294 (1985)).
Although the tests under the federal and state constitutions will often yield the same results, "the New Jersey Constitution is not a mirror image of the United States Constitution, and there may be circumstances in which the State Constitution provides greater protections." Barone, supra, 107 N.J. at 368, 526 A.2d 1055.

B. The Rational Basis Test Applies
The threshold issue under either constitution is whether the statute discriminates against either a "suspect class" or "fundamental *544 right." In the present case, plaintiffs allege a combination of the two: that the verbal threshold statute denies a fundamental right (trial by jury/access to the courts) to a suspect class (low-income people). However, for the reasons stated below, the court is of the opinion that neither trial by jury nor access to the courts is implicated; nor are low-income people a suspect class. Therefore, the court will apply the lowest levels of constitutional scrutiny, the federal rational basis test, and its counterpart under New Jersey law, a less-exacting balancing test.
"In the civil context, the right to a jury trial turns on whether that right existed at common law when the New Jersey Constitution was adopted." State v. Anderson, 127 N.J. 191, 207, 603 A.2d 928 (1992) (quoting Weinisch v. Sawyer, 123 N.J. 333, 343, 587 A.2d 615 (1991)). The provision of Article I, paragraph 9 of the 1947 Constitution that "[t]he right to trial by jury shall remain inviolate" means that a civil litigant may demand a jury trial if the same or highly analogous action entitled one to a jury trial when the people adopted their constitution. Anderson, supra, 127 N.J. at 207, 603 A.2d 928; see also Kenney v. Scientific, Inc., 213 N.J. Super. 372, 517 A.2d 484 (1986) (holding that toxic tort action for damages required jury trial).
The constitutional rights to jury trial and access to the courts, however, are not at all implicated when the Legislature restricts common law causes of action, such as the negligence claims involved here. This very issue was discussed by Judge Cohen, then sitting in Law Division, in Rybeck v. Rybeck, 141 N.J. Super. 481, 505-07, 358 A.2d 828 (Law Div. 1976).
Rybeck involved a challenge to the constitutionality of the entire No-Fault Act as originally enacted. The plaintiffs there argued, as do the plaintiffs here, that the Act unlawfully denied them access to the courts and trial by jury by diminishing their cause of action for negligently-caused injuries. Rybeck, supra, 141 N.J. Super. at 505, 358 A.2d 828. Judge Cohen rejected this argument for two reasons.
*545 First, he held that "there is no vested right in the current general law," and that it is wrong to think that "the whole range of common law causes of action existing at the time of constitutional enactment are permanently guaranteed against diminution." Ibid. Rather, "the Legislature may properly abrogate or alter a common law right or remedy prospectively, even without furnishing a substitute." Id. at 506, 358 A.2d 828 (emphasis added) (citing Magierowski v. Buckley, 39 N.J. Super. 534, 121 A.2d 749 (App. Div. 1956)).
Second, Judge Cohen reasoned that "one has a right to access to the courts only to prosecute claims cognizable there." Rybeck, supra, 141 N.J. Super. at 507, 358 A.2d 828 (emphasis added). Furthermore,
"One having a claim abrogated or limited by valid legislation is not deprived of access to the courts any more than one whose claim is outlawed by passage of the [statute of limitations]. The same is true of the right to jury trial. That right exists as to claims that may lawfully be heard by a jury. It does not survive valid prospective legislation providing that the claim should not be heard at all."
[Ibid. (emphasis added)].
In short, Judge Cohen concluded, "the legislature may validly abolish or alter a common law cause of action." Ibid.; accord Watkins v. Davis, 259 N.J. Super. 482, 489, 614 A.2d 189 (Law Div. 1992), aff'd 268 N.J. Super. 211, 633 A.2d 112 (App.Div. 1993) (stating that the ability to sue for automobile accidents is not a fundamental right); cf. Suchit v. Baxt, 176 N.J. Super. 407, 418-23, 423 A.2d 670 (Law Div. 1980) (rejecting access to courts claim against Court Rule 4:21, which then provided for medical malpractice screening panel).
In addition, just as the legislature has the power to alter a negligence cause of action, so a court can dispose of a verbal threshold case by summary judgment without violating the right to trial by jury. See Falcone v. Branker, 135 N.J. Super. 137, 152, 342 A.2d 875 (Law Div. 1975) (holding that plaintiff's right to jury trial was not being abrogated by court's grant of summary judgment, and adding that had there been any doubts as to whether *546 injuries might meet verbal threshold, court would have left issue for jury).
The Plaintiffs cite Steiner v. Stein, 2 N.J. 367, 66 A.2d 719 (1949), and Montclair v. Stanoyevich, 6 N.J. 479, 79 A.2d 288 (1951), in support of their position. Both cases are inapposite, however. Steiner, a civil case, merely interpreted the procedural provisions of the 1947 Constitution that divided the Superior Court into the Law and Chancery Divisions. In fact, the Court held that the plaintiff was not entitled to trial by jury in the Chancery Division, since the legal issues were purely incidental to the equitable issues. Steiner, supra, 2 N.J. at 380, 66 A.2d 719. Stanoyevich held merely that a person convicted of a municipal offense was not entitled to a jury trial on appeal to the county court. Stanoyevich, supra, 6 N.J. at 490, 79 A.2d 288. Thus, neither case involved the legislature restricting a common law cause of action.
Plaintiffs further assert that the Legislature has no power to abridge the right to trial by jury by statute, and that the proper method is constitutional amendment. In support of this assertion, plaintiffs cite Kenney v. Scientific, Inc., 213 N.J. Super. 372, 517 A.2d 484 (App.Div. 1986). There, the trial judge struck the plaintiffs' jury demand in a complex toxic tort case involving over 700 parties. The Appellate Division reversed, holding that because the claims sounded in tort, the plaintiffs deserved a jury trial, no matter how complex the case was. Id. at 375, 517 A.2d 484.
Kenney is clearly distinguishable from the instant case. In Kenney the tort actions were lawfully brought, and there was no statute (as there is here) prohibiting their assertion. Therefore, it was improper for the trial judge to strike the jury demand. Kenney therefore stands only for the proposition that, if the claim deserved trial by jury at common law, the trial judge cannot strike a jury demand. The case in no way addresses the Legislature's power to alter common law causes of action.
In the present case, the Legislature has prohibited the assertion in court of certain automobile negligence actions. Whereas the *547 Legislature cannot prohibit a jury trial in a legal cause of action (except by constitutional amendment), it can abrogate a cause of action entirely by statute. See Magierowski v. Buckley, supra, 39 N.J. Super. at 557-58, 121 A.2d 749; Rybeck, supra, 141 N.J. Super. at 507, 358 A.2d 828. The verbal threshold statute falls into the latter category, since it abrogates a cause of action for minor auto-related injuries.[3] Therefore, the statute does not implicate the rights to trial by jury or access to the courts and, hence, does not infringe on fundamental rights.
The next issue is whether the statute implicates a suspect class. It is axiomatic that, although the Legislature has the power to abrogate a negligence cause of action, it cannot do so in a discriminatory manner without some important justification. Here, plaintiffs argue that the statute discriminates against low-income people, who, they assert, are a "suspect class," because they cannot afford the no-threshold premium; whereas people with economic means can afford the increased premium and retain the unrestricted right to sue.
However, New Jersey courts have held that wealth/poverty is not a suspect class, nor does indigent status give rise to fundamental rights. See Barone, supra, 107 N.J. at 369, 526 A.2d 1055; Watkins v. Davis, supra, 259 N.J. Super. 482, 488, 614 A.2d 189 (Law Div. 1992), aff'd 268 N.J. Super. 211, 633 A.2d 112 (App.Div. 1993). As a matter of federal equal protection as well, the U.S. Supreme Court has excluded wealth/indigency from the suspect categories. See Schweiker v. Hogan, 457 U.S. 569, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982); San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16, 37 (1973).
*548 Since neither fundamental rights nor any suspect class is implicated by the verbal threshold statute, the statute is subject only to the rational basis test under federal law. See Phillips v. Phillips, 267 N.J. Super. 305, 320, 631 A.2d 564 (App.Div. 1993). Accordingly, the balancing test applied under New Jersey law need be less exacting as well. For the reasons stated below, the statute survives these equal protection analyses.

C. The Verbal Threshold Statute Does Not Deny Equal Protection to Low-Income People
The court notes at the outset that several other equal protection challenges to various sections of the No-Fault laws have failed. See Phillips, supra, 267 N.J. Super. at 320, 631 A.2d 564 (rejecting equal protection claim based on verbal threshold plaintiff's economic status); Murphy v. Allstate Ins. Co., 252 N.J. Super. 280, 599 A.2d 916 (App.Div. 1991) (upholding section of verbal threshold statute that deems persons not owning automobile or living in household of family member that owns automobile to have chosen verbal threshold option); Watkins v. Davis, 259 N.J. Super. 482, 614 A.2d 189 (Law Div. 1992), aff'd 268 N.J. Super. 211, 633 A.2d 112 (App.Div. 1993) (upholding N.J.S.A. 17:28-1.4, which applied verbal threshold option automatically to out-of-state drivers whose insurance company was authorized to do business in New Jersey); Frazier v. Liberty Mut. Ins. Co., 150 N.J. Super. 123, 374 A.2d 1259 (Law Div. 1977) (upholding section of No-Fault Act which provided that income continuation benefits shall be paid without regard to collateral sources, except workers' compensation, employee disability benefits, and medicare); Rybeck, supra, 141 N.J. Super. 481, 358 A.2d 828 (Law Div. 1976) (holding that entire No-Fault Act was constitutional).
Under both federal and New Jersey equal protection standards, the test generally is whether the state has a legitimate objective in drawing a classification, and whether the objective is rationally related to (under federal law), or suitably furthered by (under state law) the statute. Barone, supra, 107 N.J. at 365, 368, *549 526 A.2d 1055; Phillips, supra, 267 N.J. Super. at 320, 631 A.2d 564.
Under either standard, the verbal threshold statute is constitutional. The statute's objectives are well-known: (1) to lower insurance premiums in New Jersey; (2) to reduce the number of auto-related personal injury cases litigated in the courts; and (3) to make no-fault PIP benefits available to all people injured in auto accidents without raising the general level of premiums. Watkins, supra, 259 N.J. Super. at 491, 614 A.2d 189; see generally Oswin, supra, 129 N.J. at 295-97, 609 A.2d 415 (describing legislative history of verbal threshold statute).
These are all legitimate governmental interests, especially since New Jersey residents pay some of the highest auto insurance rates in the country. These interests are rationally related to and/or suitably furthered by the verbal threshold statute, Watkins, 259 N.J. Super. at 491, 614 A.2d 189, as a review of the caselaw will reveal.
In Phillips, supra, the Appellate Division rejected an economic status argument similar to that asserted here. Plaintiff in Phillips argued that a classification is drawn by the statute between those who can afford no-threshold coverage and those who cannot and who are forced to choose the verbal threshold. The court held that the statute satisfied the rational basis test:
A legitimate state interest exists in allowing those who choose to pay higher premiums to opt out of the verbal threshold. For obvious reasons, the Legislature may protect the people of the state from financial hardships by ensuring an opportunity to seek redress in court for injuries sustained in automobile accidents while still reducing the overall number of such suits and the consequent higher premiums that result from insurers having to pay verdicts and settlements. Those who pay higher premiums presumably offset the amount insurance companies might have to raise premiums overall. Allowing those who desire to have the opportunity to sue by paying higher premiums is thus rationally related to a legitimate state objective.
 [Phillips, supra, 267 N.J. Super. at 320, 631
 A.2d 564].
Other similar poverty/wealth arguments in the No-Fault Act context have been rejected by New Jersey courts. See Frazier v. Liberty Mut. Ins. Co., 150 N.J. Super. 123, 139-41, 374 A.2d 1259 *550 (Law Div. 1977); Rybeck, supra, 141 N.J. Super. at 499, 358 A.2d 828. In Rybeck, the plaintiff argued that poor people were less able to afford to pay the costs of medical testimony required to prove satisfaction with the verbal threshold. The court rejected this argument in language very relevant to the instant case:

Lawsuits cost money and the Constitution has not been read to relieve an injured plaintiff of the burden beyond his ability to pay and impose the excess upon others or upon the community. Access to the courts ... is not constitutionally required to be subsidized.

 [Rybeck, 141 N.J. Super. at 499, 358 A.2d 828
 (emphasis added)].
Similarly, in the verbal threshold context, it does indeed "cost money" to retain the unrestricted right to sue by choosing no-threshold. However, the no-threshold option "is not constitutionally required to be subsidized," since this would only "impose the excess" insurance premium costs upon New Jerseyans. Ibid.
Finally, in Watkins, supra, the plaintiff challenged the "Deemer Statute," N.J.S.A. 17:28-1.4, which automatically applied the verbal threshold option to out-of-state drivers whose insurance companies were authorized to do business in New Jersey. The court upheld the statute:
There is a rational basis for imposing upon this class the verbal threshold, even though they do not have the opportunity to elect "no threshold," as these individuals are receiving the benefit of a more comprehensive series of benefits without regard to fault under New Jersey law.
 [Watkins, 259 N.J. Super. at 491, 614 A.2d 189
 (emphasis added)].
Similarly, in the present case, the Guys "are receiving the benefit of" no-fault PIP payments. Thus, "even though [the Guys] do not have the [financial] opportunity to elect no threshold," the statute is rational, notwithstanding any alleged wealth classification. Ibid.
Finally, the court notes that "imperfect classifications that are part of a reasonable legislative scheme do not violate the equal protection clause." Barone, supra, 107 N.J. at 367, 526 A.2d 1055.
To summarize, the verbal threshold statute does not implicate either a suspect class or fundamental rights. Under the rational basis test, and the corresponding state balancing test, the verbal *551 threshold statute is part of a reasonable legislative scheme to reform automobile insurance. Therefore, N.J.S.A. 39:6A-8 does not discriminate against low-income insureds in violation of the equal protection guarantees of either the U.S. Constitution or the New Jersey Constitution.

II. The Plaintiffs do not Meet the Verbal Threshold
The court now turns to Defendants' motion for summary judgment against the Guys. N.J.S.A. 39:6A-8a permits plaintiffs to sue for noneconomic loss only if their injuries fall within one of the nine enumerated categories of injury:
Type 1. death;
Type 2. dismemberment;
Type 3. significant disfigurement;
Type 4. a fracture;
Type 5. loss of a fetus;
Type 6. permanent loss of use of a body organ, member, function or system;
Type 7. permanent consequential limitation of use of a body organ or member;
Type 8. significant limitation of use of a body function or system;
Type 9. a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
See N.J.S.A. 39:6A-8a; Oswin, supra, 129 N.J. at 315, 609 A.2d 415.
The Supreme Court in Oswin set forth a two-pronged analysis for determining whether a plaintiff has met the verbal threshold. First, the plaintiff must show a material dispute of fact by "credible, objective medical evidence" of an injury falling within one of the nine categories. Id. at 314, 609 A.2d 415 (the "injury requirement").
The Court made clear that subjective complaints of pain are not sufficient to satisfy the injury requirement. Id. at 318, 320, 609 A.2d 415. Therefore, range of motion tests will ordinarily not be enough, since they are based on the patient's subjective pain responses. Id. at 320, 609 A.2d 415. The Court also emphasized *552 that soft-tissue injuries are not automatically barred but that "proof may be difficult." However, the Court noted that such injuries often manifest themselves by "swelling, discoloration, and spasm." Ibid. Finally, the Court held as a matter of law that injuries such as "foraminal encroachment," "cervical myofascitis with discogenic radiculopathy," and "hyperflexion-hyperextension syndrome" do not meet the verbal threshold. Ibid.
The second prong of the Oswin test requires the plaintiff to set forth objective credible evidence of a "nexus between the injury and the disability." Plaintiff must show that the injuries have had a "serious impact" on his or her life. Id. at 318, 609 A.2d 415.
Oswin also made clear that the traditional summary judgment model applies to verbal threshold determinations. If the court decides from the medical evidence submitted that the injuries do not, as a matter of law, carry the plaintiff's case across the verbal threshold, then the defendant will prevail. If, however, the plaintiff's medical proofs present a "legitimate factual dispute over the nature and extent of the injuries, then resolution of that dispute is of course for the jury." Id. at 307, 609 A.2d 415.
Since there are two minor plaintiffs here, Laurel and Tonya Guy, the court will treat the evidence separately.

A. Plaintiff Laurel Guy
Laurel Guy was 12 years of age when the accident occurred. She was sitting in the front passenger seat with her seatbelt on, and she hit her head on the windshield upon impact. She was taken to John F. Kennedy Medical Center in Edison, treated, and released. X-rays were normal for the lumbosacral spine and skull. X-rays of the cervical spine showed cervical straightening, but no fracture or dislocation.
Laurel subsequently treated with a physiatrist, Dr. Tiedrich, for approximately four months. Upon examination, Dr. Tiedrich noted some spasm and tenderness in the cervical, dorsal, and lumbosacral spines, as well as up to 40% reduction in range of motion of *553 the lumbosacral spine. He diagnosed strains and sprains to all three spinal regions, as well as chronic secondary fibromyositis and myofascitis of those areas (reports dated July 24, 1990 and November 15, 1990). He recommended physical therapy with hot packs, stimulation, ultrasound, and massages.
Dr. Tiedrich's discharge summary dated November 15, 1990 noted that Laurel's acute symptoms had lessened as a result of the treatment, and that treatment had been reduced over time and then discontinued. Laurel still complained of intermittent episodes of pain, especially in cold and damp weather. Dr. Tiedrich opined that "there is some degree of permanent disability."
Laurel also treated on one occasion with a neurologist, Dr. Buchwald. In his report dated November 13, 1990, he stated that there were no muscle spasms, and that Laurel had full range of motion. An EEG was normal. Dr. Buchwald diagnosed closed head injury, probable cochlear injury.
Laurel's injuries can only fall, if at all, into Types 6, 7, or 8 of the verbal threshold statute. However, the court is of the opinion that Laurel has not satisfied Oswin's injury requirement. The only objective tests performed were x-rays and EEG's. The EEG's were normal, and the x-rays showed no fracture or bulging discs. See, e.g., Dabal v. Sodora, 260 N.J. Super. 397, 616 A.2d 1297 (App.Div. 1992) (holding that plaintiff met verbal threshold by showing evidence of bulging discs). The only abnormality shown on the x-ray was "cervical straightening." However, such injury does not vault Plaintiff over the threshold. See Favell v. Hernandez, 261 N.J. Super. 348, 355-56, 618 A.2d 922 (Law Div. 1992) (plaintiff did not meet threshold where injury was, among other things, "curved flattening").
Finally, Dr. Tiedrich's examinations showed no more than lumbosacral and cervical strain/sprain, fibromyositis, and myofascitis. However, these are the very types of injuries that Oswin held "as a matter of law" are not the types that the Legislature contemplated would survive the verbal threshold test. Oswin, supra, 129 N.J. at 320, 609 A.2d 415; Phillips, supra, 267 N.J. Super. at 308-12, *554 631 A.2d 564. Additionally, the court notes that Dr. Tiedrich's discharge summary of November 15, 1990 stated that Laurel's symptoms had lessened so that physical therapy was discontinued. See Watkins, supra, 259 N.J. Super. at 497, 614 A.2d 189; Favell, supra, 261 N.J. Super. at 356, 618 A.2d 922;
Since Laurel has failed to raise a genuine issue of fact as to Oswin's injury requirement, any impact that plaintiff has alleged in her certification is irrelevant. See, Favell, supra, 261 N.J. Super. at 357, 618 A.2d 922. Therefore, Defendants' motion for summary judgment as to plaintiff Laurel Guy is granted.

B. Plaintiff Tonya Guy
Tonya Guy was 8 years of age when the accident occurred. She was sitting in the rear passenger-side seat with her seatbelt fastened, and she hit her head on the window or front seat upon impact. She was taken to JFK Hospital, but no x-rays were taken.
Tonya treated with a physiatrist, Dr. Tiedrich, for three months following the accident. He diagnosed strains and sprains to both knees, and closed head injury with headaches and dizziness. He recommended physical therapy similar to that recommended for Laurel (report dated July 24, 1990). In his discharge summary dated October 18, 1990, Dr. Tiedrich noted that physical therapy had been reduced and then discontinued. Tonya complained of intermittent episodes of pain, and spasm and reduced range of motion were also intermittent.
Tonya also treated on one occasion with a neurologist, Dr. Buchwald. In his report dated August 13, 1990, Dr. Buchwald noted that there was left Temporomandibular Joint ("TMJ") tenderness, with some deviation on opening and closing of the mouth. He recommended an MRI.
An MRI of Tonya's jaw was performed at Tri-County Imaging Center on August 24, 1990, which revealed a slight fullness to the retrodiscil laminae (retrodiscitis). However, the report concludes *555 that there was "no evidence of anterior internal derangement of the articular disc."

[emphasis supplied]
On one occasion Tonya saw an oral surgeon, Dr. Geron, who examined her left TMJ. In his report dated June 24, 1992, Dr. Geron stated that the entire TMJ evaluation was normal, and that there was no evidence of any traumatic alteration.
As with Laurel, Tonya's injuries can only fall into Types 6, 7, or 8 of the verbal threshold statute. However, Tonya has also failed to satisfy Oswin's injury requirement. The only remaining pain appears to be in Tonya's knees and jaw. However, the only objective test performed was an MRI of her left TMJ, and that MRI showed no material abnormality. Moreover, physical therapy on her spine was discontinued after less than three months. Although Dr. Tiedrich noted that Tonya has intermittent pain and reduced range of motion, such subjective complaints of pain are insufficient to vault Plaintiff over the verbal threshold. See Oswin, supra, 129 N.J. at 320, 609 A.2d 415. Moreover, intermittent spasms in the three months immediately following the accident do not constitute "significant" or "permanent" limitations under Types 7 and 8. Therefore, defendants' motion as to plaintiff Tonya Guy should be granted.

III. Conclusion
In summary, plaintiffs' motion for an order declaring the verbal threshold statute unconstitutional is denied. Since, both plaintiffs Laurel and Tonya Guy have failed to satisfy the verbal threshold, Defendants' summary judgment motion is granted in its entirety and the complaint as to plaintiffs Tonya and Laurel Guy is dismissed.
NOTES
[1] Article I, paragraph 1 of the State Constitution, though not expressly providing for equal protection, has been recognized by the New Jersey Supreme Court as embodying equal protection principles similar to those in the Fourteenth Amendment. See Barone v. Department of Human Services, 107 N.J. 355, 367, 526 A.2d 1055 (1987).
[2] "The right to trial by jury shall remain inviolate...." N.J. Const., art. I, par. 9.
[3] The situation would be different had the Legislature enacted a statute that permitted people to sue for any and all auto-related injuries (like they can under the no-threshold option), but that prohibited jury trials in those actions. Such a statute would likely violate the right to trial by jury, see N.J. Const., art. I, par. 9 ("The right to trial by jury shall remain inviolate...."); thus, the Legislature could take such action only by constitutional amendment. However, this is obviously not the case here.